IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SIEMBRA FINCA CARMEN, LLC,

      Plaintiff,

      v.

SECRETARY OF THE DEPARTMENT OF
AGRICULTURE OF PUERTO RICO, *et
al.*,

      Defendants.

Civil No. 18-1783 (CCC/BJM)

## REPORT AND RECOMMENDATION

      Plaintiff Siembra Finca Carmen, LLC ("SFC") sued for declaratory and injunctive relief against the Secretary and Deputy Secretary of the Department of Agriculture of Puerto Rico ("PRDA") in their official capacities. Dkt. 1. SFC alleges that certain Puerto Rico laws are preempted by the Plant Protection Act ("PPA"), 7 U.S.C. § 7701 *et seq*. SFC moved for a preliminary injunction and filed a brief in support of declaratory judgment and permanent injunction. Dkts. 2, 17. Defendants opposed, and SFC replied. Dkts. 19, 23. This matter was referred to me for a report and recommendation. Dkt. 25. I held a status conference at which parties agreed the court can decide this case based on the pleadings and filings and without the need for an evidentiary hearing. Dkt. 30.

      For the reasons set forth below, I recommend that preliminary and permanent injunctive relief be **GRANTED**.

## BACKGROUND[1]

      SFC is a nursery engaged in the development of coffee plants in Puerto Rico. In September 2017, Hurricane Maria devastated Puerto Rico, causing significant damage to the island's coffee plants. In response, SFC made plans to import coffee seeds from various

---

[1] Because parties agree this matter can be resolved without resort to an evidentiary hearing and none of the parties' filings suggest any facts are in dispute, I draw these facts from parties' filings.

Siembra Finca Carmen, LLC, v. Dep't of Agriculture of Puerto Rico, Civil No. 18-1783 (CCC/BJM)    2

foreign countries into Puerto Rico to begin cultivating new coffee plants. To that end, SFC asked the Animal and Plant Health Inspection Service ("APHIS"), an agency within the U.S. Department of Agriculture ("USDA"), for a permit that would authorize the importation of 600 kilograms of coffee seeds. APHIS issued SFC a Controlled Import Permit on March 13, 2018, authorizing six shipments of 100 kilograms of coffee seeds into Puerto Rico. *See* Dkt. 1-3 at 1. These seeds would come from Brazil, Colombia, Costa Rica, the Dominican Republic, and Nicaragua. *Id.*

The permit allowed SFC to receive the coffee seeds and cultivate them inside an approved quarantine greenhouse facility in Vega Baja, Puerto Rico. *See id.* at 4. The seeds could be germinated inside the facility under specific conditions and "routinely monitored for indications of plant pests." *Id.* at 5. Before the plants could be released for planting in the field, SFC would need to cultivate them inside the quarantine facility for a minimum of seven months. *Id.* at 6. Ultimately, APHIS would determine whether the plants could be released into the environment. *Id.* The State Plant Health Director for Puerto Rico, an APHIS employee,[2] would need to inspect the site and seedlings, consult with a designated plant pathologist, and approve the release of the coffee plants in a written statement. *Id.* APHIS could also impose additional requirements prior to approving the plants' release. *See id.*

In addition to seeking a permit from APHIS, SFC corresponded with PRDA regarding a "Special Permit for the importation of seeds." Dkt. 1-7 at 1. As evidenced by that correspondence, PRDA also required SFC to obtain a permit prior to importing coffee seeds. *See* Dkt. 1-9 at 1. Under Puerto Rico law, such a permit is issued where an applicant

---

[2] Here, I take judicial notice of the fact that the State Plant Health Director for Puerto Rico is a federal employee, rather than an employee of the government of Puerto Rico. I find that this fact, published to the USDA's website, is "not subject to reasonable dispute." Fed.R.Evid. 201(b); *see* USDA APHIS, *Puerto Rico SPHD* https://www.aphis.usda.gov/aphis/ourfocus/planthealth/ppq-program-overview/sphd/puerto+rico (last visited Jan. 16, 2020). *See also Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of relevant facts published to the Center for Disease Control and Prevention's website).

meets various requirements, including "any other that the Secretary of Agriculture deems pertinent." *Id.* at 2. Before it would issue a permit, PRDA asked SFC to submit a "planting plan (date of planting and dates of harvesting of the material originating from said seed) after its release for planting in farms of Puerto Rico"; "a map of the farm or the farms in Puerto Rico that includes the exact location where said material will be planted"; and details regarding "any monitoring plan over the material after it is planted in the farms of Puerto Rico" or regarding "losses or damages that are associated to [sic] the material in the farms of Puerto Rico." *Id.* On July 30, 2018, SFC informed PRDA that it could not provide the requested information because it had not yet determined where the coffee plants would go in the event APHIS permitted their release from quarantine. *Id.* at 1. Dkt. 1-10.

The first shipment of seeds arrived to Puerto Rico on August 1, 2018, and SFC began cultivating those seeds in its quarantine facility. *See* Dkt. 1-5. On August 18, PRDA informed SFC that genetic material had arrived to Puerto Rico without PRDA's required permit and that said material had been "detained in [SFC's] facilities." Dkt. 1-11 at 2. PRDA reiterated that it needed additional information to process a special permit for SFC, including information on whether the nursery had "any experimental protocol with the farmers that acquire the genetic material," whether the project had "commercial purposes," and whether SFC would "assume responsibility over the genetic material no [sic] validated after its distribution to third parties." *Id.*

Matters between SFC and PRDA then escalated. Counsel for SFC's parent company, Puerto Rico Coffee Roasters, informed PRDA that it believed the agency's actions were preempted by federal law and an abuse of power. *See* Dkt. 1-12. PRDA imposed a $5,000 fine on SFC, concluding that SFC had imported 280 kilograms of coffee seeds from Nicaragua without the required PRDA permit. Dkt. 1-13 at 1–2. In the complaint imposing that fine, PRDA explained as follows: "The Department of Agriculture of Puerto Rico regulates the entry into the country of green coffee seeds, plants or products, in order to avoid the entry of plague or disease that can accompany the same." Dkt. 1-13

at 3. Thus, it is illegal to introduce coffee seeds into Puerto Rico without a special permit issued by the Secretary. *Id.* Further, anyone seeking to introduce vegetable plants and materials for propagation into Puerto Rico must obtain a PRDA permit, and individuals seeking to introduce plants that could host plague or disease must also comply with certain notification and inspection requirements. *Id.* at 4–5. PRDA found SFC in violation of these laws. *Id.* at 5–6. SFC then filed suit in the federal district court, arguing that the Puerto Rico laws regulating the import of plants and coffee seeds into the island are preempted by federal law. Dkt. 1.

## DISCUSSION

SFC seeks declaratory and injunctive relief on the basis that the PPA expressly preempts PRDA's authority to regulate the import of seeds in order to control plague or disease. PRDA responds that no such relief is merited because its actions were authorized by Puerto Rico law, which has not been preempted.

**Preliminary Injunctive Relief**

"[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015) (citing *Ex parte Young*, 209 U.S. 123, 155–156 (1908)). A plaintiff seeking a preliminary injunction must establish "(1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest." *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015) (citations omitted). A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis in original) (quoting 11A C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2948 (2d ed. 1995) [hereinafter "Wright & Miller"]).

### A. Success on the Merits

Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, any Puerto Rico law that "interferes with or is contrary to federal law" is void. *Antilles Cement Corp. v. Fortuño*, 670 F.3d 310, 323 (1st Cir. 2012) (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)). Federal law is presumed not to have preemptive effect, and that presumption is overcome "only in the face of clear and contrary congressional intent." *Id.* (citing *City of Columbus v. Ours Garage and Wrecker Serv., Inc*., 536 U.S. 424, 432 (2002)). In all cases, "[t]he purpose of Congress is the ultimate touchstone." *Retail Clerks Int'l Ass'n, Local 1625, AFL–CIO v. Schermerhorn*, 375 U.S. 96, 103 (1963). "Congress may indicate pre-emptive intent through a statute's express language," or Congress can imply a statute's preemptive intent "through its structure and purpose." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). Preemption can thus occur expressly or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963), or where the federal regulatory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp*., 331 U.S. 218, 230 (1947).

The PPA aims to protect "the agriculture, environment, and economy of the United States" from harms caused by plant pests and noxious weeds, while facilitating the entry of safe plants, which are "vital to the United State's [sic] economy." 7 U.S.C. § 7701(1), (5). To this end, the PPA allows USDA to "prohibit or restrict the importation, entry, exportation, or movement in interstate commerce of any plant" where the agency determines that such restriction is necessary to control plant pests or noxious weeds. *Id.* § 7712(a). USDA has delegated this authority to APHIS. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 144 (2010) (citing 7 CFR §§ 2.22(a), 2.80(a)(36)). In turn, APHIS has restricted the importation of coffee seeds for planting, requiring that such seeds only

be imported where authorized by a "controlled import permit." *See* 7 C.F.R. § 319.37-4(a), (f); 7 CFR § 319.73-2(b); U.S. Dep't of Agric., Plants for Planting Manual 6-384 (2020).

The PPA also contains two preemption provisions. Where a state law regulates foreign commerce, that law is preempted under the following circumstances:

> No State or political subdivision of a State may regulate in foreign commerce any article, means of conveyance, plant, biological control organism, plant pest, noxious weed, or plant product in order (1) to control a plant pest or noxious weed; (2) to eradicate a plant pest or noxious weed; or (3) prevent the introduction or dissemination of a biological control organism, plant pest, or noxious weed.

7 U.S.C. § 7756(a). There are no exceptions to the PPA's foreign commerce preemption provision.

The PPA also preempts state regulation of interstate commerce in the following circumstances:

> [N]o State or political subdivision of a State may regulate the movement in interstate commerce of any article, means of conveyance, plant, biological control organism, plant pest, noxious weed, or plant product in order to control a plant pest or noxious weed, eradicate a plant pest or noxious weed, or prevent the introduction or dissemination of a biological control organism, plant pest, or noxious weed, if the Secretary has issued a regulation or order to prevent the dissemination of the biological control organism, plant pest, or noxious weed within the United States.

7 U.S.C. § 7756(b)(1). Congress established two exceptions to the PPA's interstate commerce preemption provision. First, a state or its political subdivision may impose relevant restrictions "that are consistent with and do not exceed the regulations or orders issued by the Secretary." *Id.* § 7756(b)(2)(A). Second, states may impose relevant restrictions if they "demonstrate[] to the Secretary and the Secretary finds that there is a special need for additional prohibitions or restrictions based on sound scientific data or a

thorough risk assessment." *Id.* § 7756(b)(2)(B). Both the foreign commerce preemption provision and the interstate commerce preemption provision apply to Puerto Rico. *See* 7 U.S.C. § 7702(17) (including the Commonwealth of Puerto Rico in the definition of "state").

Although few courts have interpreted these preemption provisions, the Ninth Circuit recently struck a Maui ordinance under section 7756(b). *See Atay v. Cty. of Maui*, 842 F.3d 688, 700 (9th Cir. 2016). In that case, a Maui ordinance imposed a temporary moratorium on the cultivation and testing of genetically engineered plants, which APHIS regulated at the time. *Id.* at 694, 703. According to the Ninth Circuit, section 7756(b) expressly preempted the ordinance because a ban on certain plants constituted regulation of their movement in interstate commerce, the ordinance sought to control plant pests even though second-order concerns were also involved, and APHIS had issued regulations to prevent the dissemination of the plant pests at issue. *Id.* at 701–03; *see also id.* at 701 ("Three conditions thus must be met for a local law to be preempted: (1) the local law must regulate 'movement in interstate commerce,' (2) it must be intended to 'control . . . , eradicate . . . , or prevent the introduction or dissemination of a . . . plant pest, or noxious weed,' and (3) APHIS must regulate the plant at issue as a plant pest or noxious weed."); *but see Bader Farms, Inc. v. Monsanto Co*., No. 1:16CV299-SNLJ, 2019 WL 7372966, at *5 (E.D. Mo. Dec. 31, 2019) (state law not preempted where APHIS once regulated but later deregulated a plant pest).

For its part, Puerto Rico law gives PRDA robust powers over the importation of plants and their movement throughout the island. PRDA may "establish through regulation the conditions under which the introduction and the movement in Puerto Rico of plants and plant products or vegetative material for propagation from other states, territories, and districts of the United States, as well as from other countries, may be permitted." P.R. Laws Ann. tit. 5, § 613c(b). PRDA can also promulgate regulations "to govern propagation establishments or nurseries in Puerto Rico … as may be necessary to eradicate, control or

prevent the propagation of plant pests." *Id.* § 613c(a). The agency may inspect means of transportation, persons, plants, and goods "arriving at Puerto Rico from any place abroad, or moving within Puerto Rico" where it has "probable cause to believe that said person or means of transportation or freight carries any insect dead or alive or plant pest in violation of §§ 613–613n." *Id.* § 613d(a). Additionally, PRDA may require the presentation of documents regarding plants arriving to or moving within Puerto Rico, *id.* § 613d(b), and it may "intercept and inspect" plants that may carry plant pests and that have been introduced to Puerto Rico from any state or another country "while they are in the ship that has brought them to Puerto Rico or in transit in any vehicle in Puerto Rico, or after their arrival at the point of destination in Puerto Rico." *Id.* § 613d(h).

The agency may also establish quarantines "with respect to any region or place in Puerto Rico or with respect to any . . . foreign country, in which [it] may determine that any plant pest exists," and it may prohibit the introduction into Puerto Rico of any plant coming from a place where such quarantine pests exist. *Id.* § 613c(d). PRDA may also "[l]imit or authorize through regulation the entry at those entry ports or entry places where facilities exist for the treatment or control of plant pests, of those plants, vegetative material for propagation or any other goods or material on which a quarantine prohibition exists." *Id.* § 613c(f). Puerto Rico law also prohibits the introduction of coffee plants and seeds that come from countries "where the insect *Stephanoderes coffeae* exists" or from countries that import coffee plants from such places. *Id.* § 610. Violation of that provision is a misdemeanor, *id.* § 611, and PRDA can promulgate regulations to enforce it, *id.* § 612. Similarly, those who violate sections 613–613n, any quarantine, or any PRDA regulation are guilty of a misdemeanor and subject to administrative penalties at PRDA's discretion. *Id.* § 613n.

Acting under its broad statutory authority, PRDA promulgated a regulation requiring those seeking to introduce plants or vegetative material for propagation into Puerto Rico to obtain a permit. P.R. Dep't of Agric., Reg. No. 7448, art. IV(A) (Jan. 4,

2008) ("Reg. 7448"). To qualify for a permit, an applicant must have adequate facilities to permit inspection; present evidence that APHIS has approved importation; prove that it, he, or she is a natural or legal person; and meet any other requirement PRDA deems pertinent. *Id.* at art. IV(B). Those seeking to introduce "plants or plant material that can have plagues or diseases that attack quarantined products under the Plant Safety Program of the Department of Agriculture of Puerto Rico" must also notify PRDA prior to importing such plants. *Id.* at art. IV(E).

PRDA has also promulgated a rule that prohibits the introduction of coffee seeds and similar materials into Puerto Rico without the agency's prior permission. P.R. Dep't of Agric., Reg. No. 4114 (Feb. 13, 1990) ("Reg. 4114").  According to PRDA, such restrictions are necessary because coffee seeds can contain "plagues and illnesses such as, blight (Hemileia vastatrix) or borer beetle (Hypothenemus hamepi, Ferr)." *Id.* Those seeking to import coffee seeds into Puerto Rico may do so, provided that PRDA allows the introduction of such seeds "for experimental purposes, for propagation, genetic renewal or other purposes" and where the importer obtains PRDA's prior approval "under those conditions and protections that are imposed so that said importations will arrive free of [] diseases or spora." *Id.* Those who import coffee seeds without complying with this rule face the possibility that PRDA will return or destroy those seeds. *Id.*

Relying on its comprehensive powers over plants, PRDA required SFC to obtain a permit prior to importing coffee seeds, penalized SFC for failure to obtain said permit, and "detained" the imported coffee seeds after they arrived. This court must determine whether the laws authorizing PRDA's actions in this case are preempted by the PPA. Because the laws challenged here involve both foreign and interstate commerce, I will first ask whether they are expressly preempted by the PPA's foreign commerce preemption provision and then consider whether they are expressly preempted by the PPA's interstate commerce preemption provision. Should neither provision preempt the challenged laws, I will then ask whether those laws are impliedly preempted.

### 1. Preemption under 7 U.S.C. § 7756(a) for laws relating to foreign commerce.

Section 7756(a) expressly preempts state law where three conditions are met: a state law regulates (1) an "article, means of conveyance, plant, biological control organism, plant pest, noxious weed, or plant product" (2) in foreign commerce (3) with the purpose of controlling or eradicating a plant pest or noxious weed or "prevent[ing] the introduction or dissemination of a biological control organism, plant pest, or noxious weed." 7 U.S.C. § 7756(a); *see also* 7 C.F.R. § 352.2(d).

There can be little dispute that all the laws challenged here regulate plants. Under the PPA, "plants" are defined as "any plant (including any plant part) for or capable of propagation, including a tree, a tissue culture, a plantlet culture, pollen, a shrub, a vine, a cutting, a graft, a scion, a bud, a bulb, a root, and a seed." 7 U.S.C. § 7702(13). Similarly, under Puerto Rico law, "plants and plant products" are defined as "any vegetative matter" including but not limited to "trees, shrubs, vines, forage and farinaceous plants, grains, garden stuff, cereals and parts or products of plants such as leaves, stems, branches, roots, fruits, flowers, bulbs, tubers, stolons, cuttings, buds, grafts, seeds, trunks and wood." P.R. Laws Ann. tit. 5, § 613a(f); *see also id.* § 613a(h) ("Vegetative material for propagation—means all plants and plant products, trees, shrubs, vines, bulbs, cuttings, grafts, buds and seeds cultivated or maintained for, or capable of propagation, distribution or sale, unless they be specifically excluded through regulation promulgated by the Secretary."). Where the challenged laws regulate "plants," "seeds," or "vegetative material for propagation," which includes seeds, like those imported here, that are capable of propagation, they meet the first requirement for preemption under section 7756(a). *See id.* § 610 (prohibiting the introduction of certain coffee plants and seeds); *id.* § 613c(a) (permitting regulations governing nurseries, which cultivate plants, and permitting inspection of vegetative material for propagation); *id.* § 613c(b) (permitting PRDA to promulgate regulations governing the movement of plants); *id.* § 613c(d) (permitting quarantine and prohibitions

on the movement of plants coming from quarantined areas); *id.* § 613c(f) (permitting limits on the entry of plants at ports of entry); *id.* § 613c(f) (regarding inspections of plant shipments); *id.* § 613d(a) (permitting inspection of plants arriving at or moving within Puerto Rico); *id.* § 613d(b) (regarding the inspection of documents relative to plants); *id.* § 613d(h) (permitting the interception of plants introduced from another state or country); Reg. 7448 at art. IV(A) (requiring a permit to introduce "plants and plant propagation material"); *id.* at art. IV(E) (regulating "plants or plant material"); Reg. 4114 (prohibiting the introduction of coffee "seeds, plants or products"). Theoretically, PRDA might regulate an organism as a plant that USDA might not include in its own definition of plants—perhaps a tuber or stolon. However, in this case, both federal law and the challenged Puerto Rico laws apply to coffee seeds capable of propagation, which are plants under the PPA.

The challenged laws also aim to control "plant pests." Under the PPA, a "plant pest" is "any living stage" of any one of eight biological agents (such as a parasitic plant, virus, or bacterium) "that can directly or indirectly injure, cause damage to, or cause disease in any plant or plant product." 7 U.S.C. § 7702(14). The Puerto Rico laws authorizing the PRDA's conduct here regulate "plant pests," which, under Puerto Rico law, include any "organism or thing harmful to plants or plant products, including any stage or phase of development of such organism or thing." P.R. Laws Ann. tit. 5, § 613a(g). Both federal and Puerto Rico definitions of "plant pests" are concerned generally with harm or injury to plants, and both definitions specifically name "bacterial or viral disease[s]" and "parasitic plant[s]" as examples of plant pests. *Id.*; 7 U.S.C. § 7702(14). Frequently, the challenged laws expressly state that their aim is to control plant pests. For example, section 613c(a) authorizes PRDA to regulate nurseries "as may be necessary to eradicate, control or prevent the propagation of plant pests." Section 613c(d) empowers PRDA to quarantine places where a "plant pest exists." Sections 613d permits inspections to ensure that plants are free from plant pests. And all the challenged statutes are found within the chapter titled "Prevention of Plant Diseases." Additionally, Regulation 7448 imposes notification

requirements on importers seeking to introduce "plants or plant material that can have plagues or diseases," Reg. 7448 at art. IV(E), and Regulation 4114 seeks to control "plagues," "illnesses," and "diseases," that harm coffee crops, such as "blight (Hemileia vastatrix) or borer beetle (Hypothenemus hampei, Ferr)." Moreover, in justifying the penalty imposed on SFC, PRDA explained that it "regulates the entry into the country of green coffee seeds, plants or products*, in order to avoid the entry of plague or disease that can accompany the same*." Dkt. 1-13 at 3 (emphasis added). These laws, therefore, aim to control plant pests as required for preemption under section 7756(a).

Finally, all the laws challenged here, save section 613c(a),[3] regulate plants "in foreign commerce," as they expressly limit the entry of seeds from foreign countries into Puerto Rico. *See* P.R. Laws Ann. tit. 5, § 610 (prohibiting the entry of coffee plants and seeds coming from certain countries); *id.* § 613c(b) (authorizing regulations governing the introduction of plants into Puerto Rico from other countries); *id.* § 613c(d) (allowing PRDA to declare quarantines with respect to any foreign country and prohibit the introduction of plants from any such place); *id.* § 613c(f) (authorizing limitations on the entry of plants at ports of entry); *id.* § 613d(a) (permitting inspection of persons or means of transportation "arriving at Puerto Rico from any place abroad"); *id.* § 613d(b) (regarding documents related to plants arriving to Puerto Rico "from any place abroad"); *id.* § 613d(h) (permitting interception and inspection of plants that have been introduced to Puerto Rico from another country); Reg. 7448 at art. IV(A) (requiring anyone who seeks to introduce plants and vegetative material for propagation into Puerto Rico to acquire a permit); *id.* at art. IV(CH) (regulating the introduction of all plants and vegetative material into Puerto Rico from "any outside place"); *id.* at art. IV(E) (regulating plants that can carry diseases prior to "importation"); Reg. 4114 (prohibiting the importation of coffee seeds into Puerto Rico without PRDA approval).

---

[3] As discussed below, this law regulates interstate commerce.

PRDA argues that these laws regulate interstate rather than foreign commerce, contending that the only PPA preemption provision that might apply to the instant case is section 7756(b). In advancing this argument, PRDA asks this court to find that laws imposing restrictions on the importation of seeds into Puerto Rico from foreign countries do not regulate foreign commerce. But the agency offers no reasoned explanation for this interpretation.

The PPA does not define "foreign commerce," nor does APHIS.[4] As such, "foreign commerce" must be interpreted according to its plain meaning in the context of the statutory scheme. *Gen. Motors Corp. v. Darling's*, 444 F.3d 98, 108 (1st Cir. 2006) (internal citation and quotations omitted). Typically, "foreign" means "of, relating to, or involving another country," *Foreign*, BLACK'S LAW DICTIONARY (11th ed. 2019), and "commerce" means "the exchange of goods and services." *Commerce*, BLACK'S LAW DICTIONARY (11th ed. 2019). Under a plain language reading, then, "foreign commerce" refers to the exchange of goods and services involving a foreign country.

The PPA's definition of "interstate commerce" supports this plain language reading. Under the PPA, "interstate commerce" means "trade, traffic, or other commerce

(A) between a place in a State and a point in another State, or between points within the same State but through any place outside that State; or

(B) within the District of Columbia, Guam, the Virgin Islands of the United States, or any other territory or possession of the United States.

7 U.S.C. § 7702(7). Because Puerto Rico is a territory of the United States, commerce "within" Puerto Rico is, under this definition, "interstate commerce." *See United States v.*

---

[4] One regulation, applicable to seeds imported into the United States for immediate distribution and sale to consumers, provides as follows:

> Seed and screenings imported for immediate distribution and sale to the consuming public remain in foreign commerce until sold to the ultimate consumer. The question of when foreign commerce ceases in other cases must be considered on a case-by-case basis.

7 C.F.R. § 361.2.

*Lebron-Caceres*, 157 F. Supp. 3d 80, 82 (D.P.R. 2016) (citing *Maysonet–Robles v. Cabrero*, 323 F.3d 43, 53 (1st Cir. 2003); *Dávila–Pérez v. Lockheed Martin Corporation*, 202 F.3d 464, 468–469 (1st Cir. 2000); *United States v. Rivera–Torres*, 826 F.2d 151, 154 (1st Cir. 1987)) ("A thorough purview of relevant materials shows that Puerto Rico is [] a territory [of the United States]."). Because Puerto Rico is also included in the PPA's definition of "state," 7 U.S.C. § 7702(17), commerce between Puerto Rico and any of the several states of the United States is also, under this definition, "interstate commerce." This definition does not contemplate, however, commerce between Puerto Rico and a foreign country. This is unsurprising, as such commerce is most naturally considered "foreign." *See Penobscot Nation v. Mills*, 861 F.3d 324, 330 (1st Cir. 2017) (citing *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)) (where a statute does not specially define a term, courts construe that term "in accordance with its ordinary or natural meaning") (internal citations omitted).

Other portions of the PPA also undermine PRDA's interpretation. According to PRDA, the only relevant PPA preemption provision is that which precludes state regulation of "the movement in interstate commerce" of plants and other articles. 7 U.S.C. § 7756(b). Section 7712(a) sheds light on what Congress meant by "movement in interstate commerce." That section grants USDA authority to "restrict the importation, entry, exportation, *or movement in interstate commerce* of any plant" under specified circumstances. 7 U.S.C. § 7712(a) (emphasis added). Congress thus described four different actions—importation, exportation, entry, and movement in interstate commerce—all of which must be given meaning under principles of statutory construction. *Lopez-Soto v. Hawayek*, 175 F.3d 170, 173 (1st Cir. 1999) ("All words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant, or superfluous.") (internal citation and quotations omitted); *see also* 7 U.S.C. § 7711(a) (listing as separate actions "import, enter, export, *or move in interstate commerce*") (emphasis added). The Puerto Rico laws challenged here regulate the importation of plants—something that must

be different than movement in interstate commerce—as they require permits prior to importation and impose penalties for importation without such permits. *See, e.g.*, P.R. Laws Ann. tit. 5, § 613n; Reg. 4114; Reg. 7448 at art. IV(A). By suggesting that the Puerto Rico laws regulating importation are best understood as regulating "movement in interstate commerce," PRDA asks this court to deem statutory language superfluous and adopt an unnatural reading of the statute's plain language.

Rather than adopt this implausible interpretation, I read foreign commerce in line with its plain language meaning to refer to the exchange of goods and services involving a foreign country. The challenged laws authorized PRDA to impose permitting requirements on SFC before it could import coffee seeds from foreign countries, namely Brazil, Colombia, Costa Rica, the Dominican Republic, and Nicaragua, and permitted a penalty for failure to obtain such permit. As such, they regulate plants in foreign commerce.

In sum, all the laws challenged here regulate plants in order to control plant pests. And all, save section 613c(a), regulate plants in foreign commerce. To the extent these laws permitted PRDA to impose permitting requirements prior to the importation of coffee seeds into Puerto Rico from foreign countries and to penalize SFC for failure to obtain such a permit, they are expressly preempted by section 7756(a), which admits no exceptions.

## 2. Preemption under 7 U.S.C. § 7756(b) for laws relating to interstate commerce.

Under section 7756(b), a state may not (1) regulate a plant's movement in interstate commerce (2) in order to control a plant pest (3) if USDA "has issued a regulation or order to prevent the dissemination of the biological control organism, plant pest, or noxious weed within the United States." *See also Atay*, 842 F.3d at 701–03 (discussing these three requirements). As explained above, the Puerto Rico laws challenged here regulate plants in order to control plant pests. If those laws are preempted by section 7756(b), then, it must be because they regulate a plant's movement in interstate commerce and because APHIS has issued a relevant regulation. Here, that is the case.

In enacting the PPA, Congress found that all plants regulated by the Act "are in or affect interstate commerce." *Id.* § 7701(9). It also defined interstate commerce to include not only commerce between states and territories but also *within* any territory of the United States. 7 U.S.C. § 7702(7). Further, "[u]nder the PPA, 'movement' is defined broadly and expressly includes a plant's 'release into the environment.'" *Atay*, 842 F.3d at 701 (citing 7 U.S.C. § 7702(9)(E)). Here, PRDA has "detained" coffee seeds SFC hopes to cultivate, release from quarantine, and distribute throughout Puerto Rico. The agency has thus inhibited the release and distribution of plants within a territory of the United States. These acts and the laws authorizing them regulate a plant's movement in interstate commerce. *See* P.R. Laws Ann. tit. 5, § 613c(a) (permitting limitations on "the movement in Puerto Rico of vegetative material for propagation from [] nurseries"); *id.* § 613c(b) (permitting regulations governing "the movement in Puerto Rico of plants"); *id.* § 613c(d) (allowing PRDA to prohibit the "movement in Puerto Rico of any plant … when it is determined that such measure is necessary to protect the agricultural interests of Puerto Rico"); *id.* § 613d(a) (permitting inspection of plants moving within Puerto Rico); *id.* § 613d(h) (permitting the interception of plants introduced into Puerto Rico from another territory or state while they are "in transit in any vehicle" or "at the point of destination in Puerto Rico").

Additionally, APHIS has issued regulations to prevent the dissemination of plant pests and noxious weeds related to coffee seeds, thus satisfying section 7756(b)'s third requirement for preemption. SFC imported coffea arabica seeds. Dkt. 1-3 at 1. APHIS regulates such seeds for planting, having deemed them "Not Authorized Pending Pest Risk Analysis," as they "pose[] a risk of introducing quarantine pests into the United States." 7 C.F.R. § 319.37-4(a); *see* USDA, PLANTS FOR PLANTING MANUAL 6-384 (2020) (listing coffee plants of the rubiaceae family among those not authorized pending pest risk analysis); USDA, *Coffea Arabica L.*, https://plants.usda.gov/core/profile?symbol=COAR2 (last visited Jan. 23, 2020) (noting that the coffea arabica plant is part of the rubiaceae

family); *see also* 7 C.F.R. § 319.73-2 ("The importation of any coffee plants (including bare seeds, seeds in pulp, and any other plant parts) that are for planting or capable of being planted is restricted under Subpart H—Plants for Planting of this part."). Importation and distribution of these seeds is prohibited except where APHIS issues a controlled import permit and authorizes their release into the environment. 7 C.F.R. § 319.37-4(a), (f); 7 C.F.R. § 319.6(b) (explaining that controlled import permits aim "to prevent the introduction and dissemination of plant pests and noxious weeds within and throughout the United States").

Given that the challenged laws regulate the movement of a plant in foreign commerce in order to control plant pests and given that APHIS has issued relevant regulations, the laws permitting PRDA to detain SFC's coffee plants are preempted by section 7756(b), unless a statutory exception applies.

Section 7756(b) does not preempt state laws that are "consistent with and do not exceed the regulations or orders issued by [USDA]." 7 U.S.C. § 7756(b)(2)(A). Nor does it preempt state law where a state "demonstrates to [USDA] and [USDA] finds that there is a special need for additional prohibitions or restrictions based on sound scientific data or a thorough risk assessment." *Id.* § 7756(b)(2)(B). PRDA has not asserted that either of these exceptions apply to the instant case. Nonetheless, section 7756(b)'s exception for state laws that do not exceed USDA regulations merits further consideration.

Parties have offered precious little information regarding the nature or extent of the detention to which the coffee seeds and resulting plants are subject. Without further information on this detention, I recommend finding that the laws authorizing PRDA to detain SFC's coffee plants are preempted by section 7756(b) only insofar as they are inconsistent with the regulations or orders of USDA. Theoretically, should the PRDA "detention" coincide with APHIS's decision to release or not release the quarantined plants, then said detention would not be preempted pursuant to the exception at 7 U.S.C. § 7756(b)(2)(A).

In sum, the laws that authorized PRDA to require SFC to obtain a permit prior to importing coffee seeds from foreign countries and to penalize SFC for its failure to do so are expressly preempted by 7 U.S.C. § 7756(a). The laws authorizing PRDA to "detain" coffee plants inside SFC's quarantine facility are preempted by 7 U.S.C. § 7756(b) insofar as they are inconsistent with USDA regulations or orders, such as the decision to release the plants from quarantine.

PRDA's arguments to the contrary are unavailing. PRDA argues its laws regulating the import of coffee seeds are not preempted because the permit APHIS issued SFC contains the following language: "this APHIS permit for the commodity to be imported does not reduce or eliminate the permittee's legal duty and responsibility to likewise comply with all other Federal and State regulatory requirements applicable to the commodity to be imported." Dkt. 1-3 at 2. What appears to be an agency's boilerplate language printed on an individual permit, however, cannot supersede the express preemption provision Congress established at 7 U.S.C. § 7756. Moreover, this language does not suggest that Puerto Rico is free to impose additional requirements on the import of coffee seeds from foreign countries in order to control plant pests. Rather, it merely acknowledges that additional Puerto Rico laws might apply. Such language is consistent with the PPA, which only prohibits state regulation of plants in foreign commerce where the purpose is to control plant pests, noxious weeds, or biological control organisms. This language does not preclude regulation for another purpose.[5]

---

[5] Although the PPA does not expressly preempt the regulation of plants in foreign commerce for purposes other than controlling plant pasts, noxious weeds, and biological control organisms, I make no recommendation as to whether such regulation might nonetheless be implicitly preempted or otherwise barred by Congress's plenary authority over foreign commerce. *See Bd. of Trustees of Univ. of Illinois v. United States*, 289 U.S. 48, 56–58 (1933) (explaining that Congress's power to regulate commerce with foreign nations is "exclusive and plenary"). Parties have not raised the question of whether the Puerto Rico laws challenged here are impermissible in light of Congress's power over commerce with foreign nations, and I see no need to reach that question. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988); *Vaqueria Tres Monjitas, Inc. v. Pagan*, 748 F.3d 21, 26 (1st Cir. 2014)

Siembra Finca Carmen, LLC, v. Dep't of Agriculture of Puerto Rico, Civil No. 18-1783 (CCC/BJM)          19

PRDA also argues that its permitting requirements are not preempted because the permit issued to SFC contains the following language: "permission to release the plant material from greenhouse containment … will require a written statement from the PR SPHD." Dkt. 1-3 at 6. PRDA seems to imply that its personnel are somehow involved in the decision to release the coffee plants from quarantine. However, the PR SPHD, or State Plant Health Director for Puerto Rico, works for the federal government, not PRDA. The permit language PRDA cites does not grant the PRDA any authority to regulate the importation of seeds in order to control plant pests.

In light of the above discussion, SFC has demonstrated not only a strong likelihood of success on the merits, but actual success.[6]

### B. *Irreparable Harm*

Irreparable harm exists when plaintiff's legal remedies are inadequate. *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18 (1st Cir. 1996) (citation omitted). As the First Circuit has explained, in business "timing is everything," and the frustration of a business opportunity can constitute irreparable injury. *Hyde Park Partners v. Connolly*, 839 F.2d 837, 853 (1st Cir.1988). Thus, where plaintiff sugar importers were unable to import sugar because a Puerto Rico regulation unconstitutionally required specific packaging, they suffered irreparable harm because they had lost the "unique opportunity . . . to establish the necessary business relationships for the future" during a time of sugar shortage. *Starlight Sugar Inc. v. Soto*, 909 F. Supp. 853, 862 (D.P.R. 1995), *aff'd*, 114 F.3d 330 (1st Cir. 1997). Similarly, here SFC is positioned to cultivate new business relationships during a time when Puerto Rico's coffee farmers are still recovering from Hurricane Maria. This represents a unique business opportunity frustrated by PRDA's attempts to enforce

---

("[F]ederal courts are not to reach constitutional issues where alternative grounds for resolution are available.") (internal quotations and citation omitted).

[6] Having found the challenged laws expressly preempted by section 7756, I do not reach the question as to whether they may also be implicitly preempted. Nor do I see any need to address SFC's allegation that PRDA's actions with respect to SFC were motivated by personal animus.

preempted laws by not only imposing permitting requirements but also imposing penalties and "detaining" the plants themselves. Indeed, the fact that PRDA penalized SFC and detained its plants causes general harm to SFC's goodwill and reputation among its existing business partners. Such harm "is not easily measured or fully compensable in damages." *See Warwick, Inc. v. Baccarat, Inc*., 102 F.3d 12, 20 (1st Cir. 1996); *see also, Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc*., 143 F.3d 800, 805 (3d Cir. 1998) (noting that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill"). As such, SFC has demonstrated that it is likely to suffer irreparable harm in the absence of an injunction forbidding PRDA from continuing to enforce preempted laws.

### C.  Balance of Hardships

When determining whether an injunction should issue, courts must balance "the hardship to the movant if an injunction does not issue as contrasted with the hardship to the nonmovant if it does." *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 221 (1st Cir. 2003). Here, SFC has shown that its ability to import and cultivate coffee seeds, the business opportunities associated with such activities, and its aesthetic, environmental, and other interests in seeing the coffee plants of Puerto Rico restored after Hurricane Maria are frustrated if no injunction issues. In contrast, PRDA has advanced no convincing argument explaining why its interests are harmed by the inability to continue enforcing preempted laws. *See United States v. U.S. Coin & Currency*, 401 U.S. 715, 726 (1971) (Brennan, J., concurring) ("[A] government has no legitimate interest in upholding an unconstitutional [law]."). The balance of hardships thus favors SFC.

### D.  Public Interest

The public interest that is referred to under the fourth factor refers to "the public interest in the issuance of *the injunction itself*." *Braintree Labs., Inc. v. Citigroup Global Markets, Inc.*, 622 F.3d 36, 45 n.8 (1st Cir. 2010) (emphasis in original). The relevant question is whether there is "a fit (or lack of friction) between the injunction and the public

interest." *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003). Just as a government has no interest in enforcing an unconstitutional law, the public interest is harmed by the enforcement of laws repugnant to the United States Constitution. *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[E]nforcement of an unconstitutional law is always contrary to the public interest."). Moreover, the public has a strong interest in seeing its agricultural interests restored after the harm caused by Hurricane Maria, "by far the most destructive hurricane to hit Puerto Rico in modern times." *Municipality of Cabo Rojo v. Powersecure, Inc*., 390 F. Supp. 3d 327, 330 (D.P.R. 2019) (internal citation and quotations omitted). Enforcement of laws that unconstitutionally frustrate the importation of plants meant to assist in those restoration efforts is contrary to the public interest.

Because all four factors favor the issuance of a preliminary injunction to mitigate the irreparable harm facing SFC, I recommend granting SFC's request for preliminary relief.

**Permanent Injunctive Relief**

"Where a plaintiff seeks permanent injunctive relief, the test is the same [as for preliminary injunctive relief], except that 'the movant must show actual success on the merits of the claim, rather than a mere likelihood of success.'" *Caroline T. v. Hudson School Dist*., 915 F.2d 752, 755 (1st Cir.1990) (quoting *K–Mart Corp. v. Oriental Plaza, Inc*., 875 F.2d 907, [915] (1st Cir.1989)). Here, SFC has demonstrated not only likely but actual success on the merits. Permanent injunctive relief is therefore merited.

The scope of relief SFC seeks, however, is beyond that required by law. For instance, SFC seeks a permanent injunction barring PRDA from requiring it "to comply with *any requirements* in connection with the import, germination, planting, propagation, release into the environment, disposition, entry or movement within Puerto Rico or in interstate commerce, of coffee seeds or coffee plants in Puerto Rico." Dkt. 17 at 13 (emphasis added). As explained above, however, section 7756(b) would permit PRDA to regulate SFC's coffee plants if its regulations are consistent with and do not exceed

Siembra Finca Carmen, LLC, v. Dep't of Agriculture of Puerto Rico, Civil No. 18-1783 (CCC/BJM)    22

USDA's or if the agency has sought and received special leave from USDA. An injunction that would prevent PRDA from enforcing any requirements would prevent enforcement of laws that section 7756(b) arguably would permit. I therefore recommend entering a permanent injunction that prevents PRDA from enforcing its laws to the degree they are preempted by the PPA but admits those exceptions permitted by the same.

## CONCLUSION

For the foregoing reasons, I recommend that the court **GRANT** preliminary and permanent injunctive relief and issue the following order:

The Secretary of the Department of Agriculture of Puerto Rico, his agents and employees, are hereby ordered to refrain from engaging in any of the following conduct:

- Requiring SFC to obtain a permit prior to the importation of coffee seeds for planting from foreign countries;

- Prosecuting any action or levying any sanction against SFC for its failure to obtain a permit prior to the importation of coffee seeds for planting from foreign countries;

- Detaining or otherwise regulating the coffee seeds and coffee plants inside SFC's quarantine facility unless said detention is consistent with and does not exceed USDA's decision to release or not release the plants into the environment;

- Enforcing any law against SFC that regulates coffee seeds for planting in foreign commerce (defined as commerce between Puerto Rico and any foreign country) in order to control, eradicate or prevent the introduction of dissemination of a biological control organism, plant pest, or noxious weed into Puerto Rico;

- Enforcing any law against SFC that regulates the movement of coffee seeds for planting in interstate commerce in order to control, eradicate or prevent the introduction or dissemination of a biological control organism, plant pest, or noxious weed, unless such enforcement is consistent with and does not exceed the regulations or orders issued by USDA or unless PRDA has obtained leave from USDA as provided in 7 U.S.C. § 7756(b)(2)(B).

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within 14 days**. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 23rd day of January 2020.

S/Bruce J. McGiverin
BRUCE J. McGIVERIN
United States Magistrate Judge